IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERWORLD NETWORK INTERNATIONAL, INC., a California Corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>VWR INTERNATIONAL, INC., a Delaware corporation; M.K. SATHYA, an individual; and DOES 1 through 10, inclusive,<br><br>       Defendants.<br>_____/ | No. C 11-4843 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO DISMISS (Docket Nos. 12 and 15) |

Plaintiff Interworld Network International, Inc. moves to remand this case to state court. Defendants oppose Plaintiff's motion, and move to dismiss all claims against them. Plaintiff opposes Defendants' motion to dismiss. The Court took the parties' motions under submission on the papers. For the reasons set forth below, the Court GRANTS Plaintiff's motion to remand and DENIES Defendants' motion to dismiss.

BACKGROUND

The facts set forth below are taken from Plaintiff's Complaint, which is attached to Defendants' Notice of Removal, unless otherwise noted.

Plaintiff is a California corporation that imports and exports certain products, many of which are manufactured in Asia. Compl. ¶¶ 1, 7. Plaintiff has many business contacts with

manufacturers in Asia. Id. at ¶ 7. Plaintiff's warehouse is located in Fremont, California. Id.

VWR is a Delaware corporation with its primary offices in Pennsylvania. Id. at ¶ 2. M.K. Sathya is a California resident and was the agent and representative of VWR during the relevant times. Id. at ¶ 3.

In 2005, VWR and Sathya approached Plaintiff with a proposal that Plaintiff introduce VWR to Asian manufacturers, so that VWR could purchase products directly from these companies. Id. at ¶¶ 2, 9. Under the proposal, VWR would then pay Plaintiff to import, warehouse, and distribute these products. Id. at ¶ 9.

To induce Plaintiff to accept the proposal, VWR and Sathya represented to Plaintiff that the volume of business that would be channeled through Plaintiff "would be very large, somewhere in the range of $50 million per year." Id. at ¶¶ 10, 25, 32. Defendants also represented that Plaintiff "would need to expand its warehouse and logistic facilities to accommodate this increased volume of business." Id. at ¶¶ 25, 32. Plaintiff alleges that, in reality, these representations were false and that either Defendants knew that they were false at the they made them or Defendants made them without having any reasonable ground for believing them to be true. Id. at ¶¶ 26, 32. Plaintiff alleges that Defendants made these representations with the express intent to defraud Plaintiff and co-opt its business contacts. Id. at ¶ 30.

2

In June 2005, based on Defendants' representations, Plaintiff entered into an agreement with VWR regarding the subject matter of the proposal. Id. at ¶ 11. Plaintiff also relied on these representations to increase its warehouse space and introduce VWR to its suppliers. Id. at ¶¶ 28, 35. Plaintiff alleges that it would not have taken any of these actions if not for Defendants' representations and that it suffered harm as a result. Id. at ¶¶ 28-29, 35-36.

The contract signed by Plaintiff and VWR states, among other things, "This Agreement are [sic] the complete Agreement between the parties regarding [Plaintiff's] provision of Services and Deliverables to VWR and shall supersede and replace all prior communications, Agreements and understandings, oral or written, between the parties regarding the subject matter hereof and thereof." Compl. ¶ 11, Ex. A at 8. The Agreement provided a graduated pricing structure for Plaintiff's services to VWR as follows:

> (1) Annual [Purchase Order (PO)] volumes of 0-50 MM$ - 4% of PO value
>
> (2) Annual Cumulative PO volumes of 50-100MM$ - 3.5% of PO value over 50MM $
>
> (3) Annual Cumulative PO volumes of 100+MM$ - 3% of PO value over 100M$

Id. at 2. The Agreement designated Sathya as VWR's contract representative. Id. at 8. The Agreement also contained a choice of law provision, which states, "The Agreement will be governed by

3

and construed in accordance with the laws of the State of Pennsylvania without giving effect to the principles of conflict of law." Id.

The Agreement was amended on October 3, 2006. Compl. ¶ 11. Among other things, the addendum provided that VWR would pay Plaintiff four percent of PO value per shipment for services provided. Compl. ¶ 11, Ex. A at 15.

The level of business volume did not reach the level that had been represented. Compl. ¶ 15. On March 20, 2009, VWR informed Plaintiff that it was terminating the agreement. Id. at ¶ 16. Plaintiff alleges that VWR breached the contract in various ways before and after that date. Id. at ¶¶ 15-18, 22.

On July 21, 2011, Plaintiff filed a complaint in the Alameda County Superior Court, alleging breach of contract and unfair business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., against VWR and fraud and negligent misrepresentation against both Defendants.

On September 30, 2011, Defendants removed the action to federal court based on diversity jurisdiction. In their Notice of Removal, Defendants alleged that Sathya was a sham defendant and that his citizenship should be disregarded for diversity purposes. On October 7, 2011, Defendants filed a motion to dismiss all counts in the complaint.

On October 20, 2011, Plaintiff filed a motion to remand the action to state court.

4

LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1447(c) provides that if, at any time before judgment, it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. On a motion to remand, the scope of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. Courts should resolve doubts as to removability in favor of remanding the case to state court. Id.

DISCUSSION

Plaintiff argues that, because it and Sathya are citizens of California, the Court lacks diversity jurisdiction over its action. Defendants do not dispute that Sathya is a California citizen and thus non-diverse to Plaintiff. Instead, they argue that Sathya was fraudulently joined to this action.

To make a showing of fraudulent joinder, Defendants "must demonstrate that there is no possibility" that Plaintiff will be able to establish a cause of action in state court against Sathya. Lantz v. DaimlerChrysler Corp., 2005 WL 1629937, at *1 (N.D. Cal.). There is a general presumption against finding fraudulent

5

joinder, and Defendants carry "a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 1141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).

A. Choice of Law

The parties dispute whether California or Pennsylvania applies to the claims against Sathya. Because the Court grants Plaintiff's motion to remand under either California or Pennsylvania, the Court does not resolve whether or not the choice-of-law clause in the contract applies to the claims against Sathya.

B. Parol Evidence

Defendants argue that Plaintiff's claims against Sathya are barred by parol evidence under either California or Pennsylvania law. Defendants' argument are unavailing in either state.

Under California law, parol evidence is admissible to demonstrate alleged fraudulent inducement. Hensley v. Oakshade Town Center, 135 Cal. App. 4th 289, 301 (2005). "Fraud in the inducement renders the entire contract voidable, including any provision in the contract providing the written contract is, for example, the sole agreement of the parties, that it contains their entire agreement and that there are no oral representations (integration/ no oral representations clause)." Id.

Defendants argues that this rule does not bar "a promise directly at variance with the promise in the writing." Reply at 9 n.5 (internal citations and quotations omitted). However, the

6

alleged promise regarding volume of sales does not contradict a promise made in the contract itself. Defendants state that "the Agreement expressly contemplates that VWR may have an order volume as low as $0," Reply at 10, and cite to the payment clause quoted above. That clause does not imply that there could be a volume of zero; instead, it establishes a graduated payment scheme, in which Defendants would pay a higher percentage for order volume up to a certain amount and a lower percentage for the portion of the order volume that exceeds that amount.

Pennsylvania law precludes the use of parol evidence in fraudulent inducement claims involving a fully integrated contract. See Interwave Tech. Inc. v. Rockwell Automation, Inc., 2005 U.S. Dist. LEXIS 37980, at *43-55 (E.D. Pa.) (discussing, inter alia, Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287 (3d Cir. 1996); 1726 Cherry St. Partnership v. Bell Atlantic Properties., 439 Pa. Super. 141 (1995); HCB Contractors v. Liberty Place Hotel Assocs., 539 Pa. 395 (1995)). However, under Pennsylvania law, Sathya is not a party to the Agreement and the integration clause therefore does not bar fraud in the inducement claims against him. See Interwave, 2005 U.S. Dist. LEXIS 37980, at *55; (holding that the integration clause barred the plaintiff's fraud in the inducement claims against the defendant who was the party to the contract, but not those against the defendant who was not a party to the contract); Sunquest Info. Sys. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 656 n.7 (W.D. Pa. 1999) (similar). In

7

both Interwave and Sunquest, the courts distinguished cases applying the protection of the integration clause to agents of the party to the contract, because in those cases, "the integration clauses, unlike here, specifically referred to the representations of the agents as barred." Interwave, 2005 U.S. Dist. LEXIS 37980, at *55-56; Sunquest, 40 F. Supp. 2d at 656 n.7 (citing Bowman v. Meadow Ridge, Inc., 419 Pa. Super. 511 (1992) and Iwashyna v. Department of Housing & Urban Dev., 1993 U.S. Dist. LEXIS 11369, at *14 (E.D. Pa.). As in Interwave and Sunquest, the integration clause here does not specifically refer to the representations of VWR's agents, including Sathya, and thus it does not necessarily prevent the fraudulent inducement claim against him.

Accordingly, Defendants have not shown that there is no possibility that Plaintiff will be able to establish in state court that the parol evidence rule does not bar Plaintiff's claims against Sathya in either California or Pennsylvania.

C. The Gist of the Action Rule

Defendants also argue that Plaintiff's claims against Sathya are barred by Pennsylvania's gist of the action rule.

"Pennsylvania's gist of the action doctrine 'bars claims for allegedly tortious conduct where the gist of the alleged conduct sounds in contract rather than tort.'" Farmaceutisk Laboratorium Ferring v. Shire U.S., Inc., 2009 U.S. Dist. LEXIS 30209, at *23 (E.D. Pa.) (quoting Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004). The purpose of the doctrine is

8

to "preclude[] plaintiffs from re-casting ordinary breach of contract claims into tort claims." Id. (quoting eToll v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). "Although a breach of contract can give rise to an actionable tort, 'to be construed as in tort . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral.'" Id. (quoting Bash v. Bell Tel. Co., 411 Pa. Super. 347, 355-56 (1992)). "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." Id. at *23-24 (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)) (internal quotation marks omitted).

"Fraud in the inducement claims are not barred by the gist of the action doctrine where the fraud involves representations of fact independent of promises of performance made in the contract." Id. at *24 (citing eToll, 811 A.2d at 17; TruePosition, Inc. v. Sunon, Inc., 2006 U.S. Dist. LEXIS 32918, at *3 (E.D. Pa.); Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003)). "Fraud to induce a person to enter into a contract is generally collateral to (i.e., not interwoven with) the terms of the contract itself." Id. (quoting Air Prods., 256 F. Supp. 2d at 341) (internal quotation marks and formatting omitted). However, "promises made to induce a party to enter into a contract that eventually become part of the contract itself

9

cannot be the basis for a fraud-in-the-inducement claim under the gist of the action doctrine." Id. (quoting Freedom Props., L.P. v. Lansdale Warehouse Co., 2007 U.S. Dist. LEXIS 57116, at *6 (E.D. Pa.)).

The cases cited by Defendants are distinguishable in that each involved complaints that directly asserted both tort and contract claims against the defendants that overlapped heavily with one another. Here, the only claims asserted against Sathya are tort claims. Further, the claims against him are related to the inducement into the contract, rather than promises regarding performance made in the contract.

Accordingly, Defendants do not establish that Plaintiff's claims against Sathya are a sham based on the gist of the action doctrine.[1]

D. The Economic Loss Rule

Defendants argue that Plaintiff's claims against Sathya are barred by Pennsylvania's economic loss rule.

"The economic loss doctrine precludes recovery in tort for economic losses arising from breach of contract." Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc., 28 F.

---

[1] In a footnote, Defendants also assert that "California courts, too, are reluctant to permit tort recovery in breach of contract situations." Opp. at 11 n.6. However, Plaintiff is suing Sathya for fraudulent inducement, which is distinct from tortious breach of contract, the subject of the only case that Defendants cite. See Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85 (1995).

10

Supp. 2d 947, 951 (E.D. Pa. 1998) (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995); General Public Utilities v. Glass Kitchens of Lancaster, Inc., 374 Pa. Super. 203, 208-10 (1988)).

For their argument, Defendants rely solely on the Third Circuit's decision in Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), in which the court predicted that Pennsylvania's Supreme Court would apply the doctrine to intentional fraud in products liability cases. The plaintiffs in Werwinski brought claims for breach of express warranty, breach of implied warranty, fraudulent concealment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) based on defects in vehicles manufactured by the defendants. Because the only damage suffered was to the products themselves, the Third Circuit court reasoned that the plaintiffs' fraud claims were barred by the economic loss doctrine. The court acknowledged that other courts have excepted "fraud in the inducement" claims from the economic loss doctrine. Id. at 677-78. However, the court noted that this only occurred when the fraud was not intertwined with the contract claims. The court found that the fraud in that case was intertwined with the contract claims, because it were "undergirded by factual allegations identical to those supporting their breach of contract counts" and it "did not cause harm to the plaintiffs distinct from those caused by the breach of contract,"

11

so that the plaintiffs would be made whole under contract law. Id. at 678-80 (citations omitted).

Here, unlike in Werniski, Plaintiff has alleged no breach of contract claims against Sathya, who was not a party to the contract, and thus, Plaintiff cannot be made whole, vis-à-vis any claims against him, through contract law. Defendants have provided no authority that would support that the economic loss rule should apply in such a situation. Accordingly, Defendants do not show that the economic loss rule renders the claims against Sathya a sham.

Defendants' attempt in a footnote to assert the economic loss rule under California law likewise fails. "The economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." Multifamily Captive Group, LLC v. Assur. Risk Managers, Inc., 629 F. Supp. 2d 1135, 1145 (E.D. Cal. 2009) (quoting Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988 (2004)) (internal formatting and quotations omitted). "It precludes recovery for purely economic loss due to disappointed expectations, unless the plaintiff can demonstrate harm above and beyond a broken contractual promise." Id. (internal formatting and quotations omitted). Here, Defendants point to no alleged broken contractual promise between Sathya and Plaintiff that would preclude a tort claim and thus do not show that there is no possibility that Plaintiff will be able to establish a cause of action in state court against Sathya.

E. Managerial Privilege

Defendants argue that, because Plaintiff alleged that all actions taken by Sathya were taken in his capacity as an agent of VRW, Plaintiff's claims against Sathya are barred by the managerial privilege under California law.

The general rule in California is that agents may be held liable for their own wrongful acts even if done on behalf of a principal. See, e.g., Cal. Civ. Code § 2343 ("One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . when his acts are wrongful in their nature."); see also 3 Witkin, Sum. Cal. Law Agency § 199 ("An agent or employee is always liable for his or her own torts, whether the principal is liable or not, and in spite of the fact that the agent acts in accordance with the principal's directions."); Restatement 3d of Agency § 7.01 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."). According to the California Supreme Court, "the agent is liable for his own acts, regardless of whether the principal is liable or amenable to judicial action." Frances T. v. Village Green Owners Ass'n, 42 Cal. 3d 490, 505 (1986).

"The general rule applies with equal force in the context of fraud and misrepresentation." Black Donuts, Inc. v. Sumitomo Corp. of Am., 2010 U.S. Dist. LEXIS 30859, at *21-22 (C.D. Cal.). "An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal." Id. at *22 (quoting Restatement 2d of Agency § 348). See also 3 Witkin, Sum. Cal. Law Agency § 199(1) ("an agent who commits an independent tort, such as fraud, remains liable despite the fact that the principal, by ratification, also becomes liable"); Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 107 Cal. App. 4th 54, 68 (2003) ("An agent or employee is always liable for his own torts, whether his employer is liable or not. In other words, when the agent commits a tort, such as fraud, then the agent is subject to liability in a civil suit for such wrongful conduct.") (internal formatting and quotations omitted).

Defendants argue that this general rule does not apply, because of the so-called "manager's privilege," which protects an agent from individual liability for certain acts taken on behalf of his employer or principal, unless the agent or employee acts as a dual agent or acts for his own personal advantage. Graw v. Los Angeles County Metro. Transp. Auth., 52 F. Supp. 2d 1152, 1154-1155 (C.D. Cal. 1999). Contrary to Defendants' position, however,

14

it is a doctrine of limited applicability: "the manager's privilege rule applies only in the context of tortious interference with contract." Black Donuts, 2010 U.S. Dist. LEXIS 30859, at *26 (C.D. Cal.). See also Graw, 52 F. Supp. 2d at 1154 ("[T]he manager's privilege is merely an application of the general rule that the tort of intentional interference with economic relations applies only to disinterested parties. As an interested party, a manager's actions are privileged."). Thus, the privilege serves to protect a business advisor who "counsel[s] his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests." Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 326 (9th Cir. 1982).

In the case at hand, Plaintiff does not allege that Sathya counseled VWR to breach the contract or that Sathya interfered with the carrying out of the contract in any way. Instead, Plaintiff alleges that Sathya made intentional or negligent misrepresentations to induce Plaintiff to enter into the contract in the first place. Thus, Defendants have not demonstrated that the manager's privilege renders Plaintiff's claims against Sathya a sham.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED (Docket No. 15). Because the case will be remanded, Defendants' motion to dismiss is DENIED as moot without prejudice to renewal by way of demurrer on remand (Docket No. 12).

1  The Clerk shall remand this action to Alameda County Superior
2  Court and close the file.
3  IT IS SO ORDERED.

Dated: 1/10/2012

CLAUDIA WILKEN
United States District Judge